Defendant appeals from judgments and commitments entered 22 September 2008 after a jury returned verdict of guilty of first degree murder. For the reasons stated herein, we find no error in the judgment of the trial court.
 FACTS
The evidence presented at trial shows that on 12 March 2006, Dominique Hope was bagging marijuana with Jerome Owens. At that time, defendant and his companion, Charles Johnson, approached Hope and Owens and told them of a potential sale in Massey Hill. Hope and Owens agreed to ride with defendant to make the sale.
The group first stopped at a BP station on Murchison Road. Defendant and Johnson went inside to get a beer and had a conversation with a woman named "Tassie." When the pair returned to the car, they had a "slight argument" regarding the woman.
After leaving the gas station, the group went to an apartment at Massey Hill. Hope and defendant entered the apartment to make the sale while Owens and Johnson remained in the car. Hope returned to the car and after waiting, Hope urged Johnson to get defendant because Hope was concerned about getting caught with his marijuana. Johnson left but came back without defendant, got into the driver's seat and was about to move the car when defendant appeared.
Hope, a witness for the State, testified defendant asked Johnson "Why the f___ you in my car . . . What you get in my car for?" Hope further testified:
 He was, like — he told him to get the f___ ___ he was like, "Get the f___ out of my car. Get the f___ out — "I mean, Get off — get out — what you doing driving my car?" this, that and the third. Dude — but he didn't give the dude time to explain — he was like, "Get the f___ out. Get the f___ out." So the dude got — he ain't get out; he jumped over the passenger side where he was sitting at. So they rolled up the street a little bit arguing back and forth.
Defendant then stopped the car and told Johnson, "Get the f___ out of my car. Let me talk to you — let me talk to you out my car right quick?" Defendant and Johnson got out and walked to the back of the car.
Owens, who was also in the car at the time, testified that defendant and Johnson were talking steadily but not arguing very loudly. Then a shot was fired and Owens saw Johnson holding his pants leg, screaming "[s]top, stop." Owens looked away then heard a second shot. Then defendant jumped in the car and Hope jumped out and ran.
Michael Sweet was at home on 12 March 2006 waiting for a visitor when he saw a red car pull up, two people get out of the two front seats, and walk to the back of the car. Sweet testified that the man who got out on the driver's side had a gun held above his head. Sweet watched as the driver shot the other man in the leg. Sweet then saw the shooter pull the other man up and put the gun to his head. Sweet testified that he heard and watched the driver shoot the other man twice. From a vantage point fifteen feet away, Sweet described the shooter, who was under the street lights as a "light-skinned black male."
Samantha McCloud testified she met defendant through Owens two days before the incident, and they spent those two days together. On 12 March 2006, defendant returned to McCloud's residence in a white truck with a man who was introduced to her as Charles. Defendant and Charles parked the truck at McCloud's, and then left in defendant's car, a red Chevrolet. McCloud testified that defendant returned sometime after nine o'clock in the evening and used a bottle of 409 cleaner to clean his car. Defendant told McCloud to have the white truck towed away and to inform the towing company that the truck had been in her yard for a few hours after she returned from work. McCloud testified she saw defendant's gun in the driver's side door of defendant's car the first day she met him and noted that defendant kept the gun with him at all times.
At trial, defendant moved to dismiss the charge of first degree murder at the close of the State's evidence and at the close of all the evidence. Defendant's motions were denied. The jury returned a verdict of guilty of first degree murder and the trial court entered judgment and commitment accordingly. Defendant appeals.
 ________________________
Defendant raises two issues on appeal: whether the trial court erred (I) in denying defendant's motions to dismiss and (II) by prohibiting the cross-examination of witness Dominique Hope.
 I
Defendant first argues that the trial court erred in denying his motion to dismiss the first degree murder charge and any lesser included offenses on the grounds that the evidence was insufficient to establish every element of the offense and insufficient to establish defendant's identity as the perpetrator. Defendant primarily contends the State failed to establish that Defendant killed Johnson with premeditation and deliberation. We disagree.
"Upon defendant's motion for dismissal, the question for the [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Scott, 356 N.C. 591, 595,573 S.E.2d 866, 868 (2002).
 In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
Id. at 596, 573 S.E.2d at 869 (internal and external citations and quotations omitted). "[I]n deciding whether the trial court's denial of defendant's motion to dismiss violated defendant's due process rights, this Court must determine whether `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"State v. Penland, 343 N.C. 634, 648. 472 S.E.2d 734,741 (1996) (quoting Jackson v. Virginia, 443 U.S. 307,319 (1979)).
"First degree murder is the unlawful killing, with malice and premeditation and deliberation of another human being."State v. Arrington, 336 N.C. 592, 594, 444 S.E.2d 418,419 (1994) (citing N.C. Gen. Stat. § 14-17 (1993)). Premeditation occurs when the "defendant [has] formed the specific intent to kill the victim for some length of time, however short, before the actual killing." Id.
(citation omitted). "Deliberation means that defendant carried out the intent to kill in a cool state of blood, `not under the influence of a violent passion, suddenly aroused by lawful, just cause, or legal provocation.'" Id. (quotingState v. Hamlet, 312 N.C. 162, 170, 321 S.E.2d 837,842-43 (1984)).
Here, two of the State's witnesses testified that while they were at Massey Hill, defendant became angry after Johnson began to drive defendant's car and that defendant and Johnson continued to argue after Johnson moved out of the driver's seat and defendant took his place. There was testimony that defendant did not let Johnson explain his actions and that defendant insisted on talking to Johnson outside the car. Owens testified that defendant — who exited the driver's seat, and Johnson — who exited the passenger's seat, were not arguing very loudly before the first shot was fired, but afterwards Johnson was holding his pants leg and screaming "[s]top, stop." Another witness, Sweet, who observed the incident while standing in his home, testified that after shooting the man in the leg, the driver pulled the man up, put the gun to his head, and shot him in the head. The sum of the eyewitness testimony at the most shows defendant was unreasonably angry at Johnson for driving his car. There is no evidence of any additional provocation on the part of Johnson that could have mitigated the premeditation and deliberation shown by defendant at the time of the shooting. Further, the evidence shows that after the shooting, defendant went to McCloud's house, cleaned his car with 409 cleaner, and instructed McCloud to have Johnson's truck towed from her yard. Therefore, there is substantial evidence for the jury to find that defendant acted with premeditation and deliberation.
Finally, the State presented overwhelming evidence of defendant's identity as the driver and shooter. There were several eyewitnesses to the murder, including Hope and Owens who rode in the car with defendant prior to the shooting, and were in the car at the time of the shooting. The other eyewitness, Sweet, observed the shooting from the window of his home fifteen feet away and was able to describe the shooter. Therefore, there was sufficient evidence from which the jury could find that defendant was the perpetrator of the crime.
We hold this evidence, viewed in the light most favorable to the State, sufficient to constitute substantial evidence of premeditation and deliberation required to prove the crime of first degree murder and to identify defendant as the perpetrator. Therefore, the trial court did not err in denying defendant's motion to dismiss. Accordingly, this assignment of error is overruled.
 II
Next, defendant argues the trial committed reversible error by granting the State's motion in limine prohibiting defendant's cross-examination of Dominique Hope regarding another homicide. We disagree.
The standard of review on appeal of a trial court's decision to exclude or admit evidence is abuse of discretion. State v.Wood, 185 N.C. App. 227, 231, 647 S.E.2d 679, 684 (2007) (citations and quotations omitted). The trial court commits an abuse of discretion when it renders an arbitrary decision that could not have been the "result of a reasoned decision."Id. (Internal quotations omitted).
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403 (2007). Rule 404 (b) of the North Carolina Rules of Evidence provides that:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.
N.C. Gen. Stat. § 8C-1, Rule 404 (b) (2007).
Rule 609 (a) states that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has beenconvicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter." N.C. Gen. Stat. § 8C-1, Rule 609 (a) (2007). However, Rule 608 (b) provides:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
N.C. Gen. Stat. § 8C-1, Rule 608 (b) (2007). Thus, the Supreme Court of North Carolina concluded in State v.Morgan that specific instances of conduct, as opposed to opinion or reputation evidence, may be admitted when:
 (1) the purpose of producing the evidence is to impeach or enhance credibility by proving that the witness' conduct indicates his character for truthfulness or untruthfulness; and (2) the conduct in question is in fact probative of truthfulness or untruthfulness and is not too remote in time; and (3) the conduct in question did not result in a conviction; and (4) the inquiry into the conduct takes place during cross-examination.
State v. Morgan, 315 N.C. 626, 634, 340 S.E.2d 84,89-90 (1986). "If the proffered evidence meets these four enumerated prerequisites, before admitting the evidence the trial judge must determine, in his discretion, pursuant to Rule 403, that the probative value of the evidence is not outweighed by the risk of unfair prejudice, confusion of issues, or misleading the jury . . ." Id. at 634, 340 S.E.2d at 90.
Types of conduct which are indicative of a witness' credibility include "`use of false identity, making false statements on affidavits, applications or government forms corrupt or cheat others, and attempting to deceive or defraud (including tax returns), giving false testimony, attempting to others."Id. at 635, 340 S.E.2d at 90 (quoting 3 D. Louisell C. Mueller, Federal Evidence § 305 (1979) (footnotes omitted)). Evidence of "violence against otherpersons" is often regarded as irrelevant. Id.
The State filed a motion in limine requesting the court to prohibit defendant from eliciting any information or questioning of Hope regarding his alleged, unsubstantiated involvement in a separate homicide. The State contended that the evidence was irrelevant and inadmissible under Rules 404(b), 608(b), and 609, and would be prejudicial to the State under Rule 403.
During trial and prior to a ruling on the state's motion in limine, defendant sought to impeach Hope's credibility by using evidence of another homicide during cross-examination of Hope. The trial court heard arguments of counsel outside the presence of the jury. Defendant wanted to introduce testimony that Dominique Hope was named as one of four suspects in the homicide of Paul Peele on 22 May 2006. Defendant's proposed evidence was that during the Peele homicide, a witness approached Hope and asked him, "Did you kill that boy?" to which Hope responded, "I'll kill you, too." Defendant also noted for the trial court that Hope was interviewed by the Cumberland County Sheriff's Department, that he denied any involvement, and he was never developed as a suspect. At the conclusion of the arguments, the trial court granted the State's motion in limine and prohibited defendant from asking Hope any questions about the Peele homicide. Defendant argues the trial court erred in granting the state's motion in limine. Defendant did not assert that Hope's testimony would be admitted under Rule 404(b), therefore we will not address admissibility under Rule 404(b). As to Rule 609, evidence that Hope was questioned by law enforcement regarding a homicide could not be admitted under Rule 609 since he was never convicted of a crime. See Rule 609 (stating that "for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter." N.C. Gen. Stat. § 8C-1, Rule 609 (2007)).
The evidence defendant seeks to admit would be admissible under Rule 608(b) only if the evidence met the four requirements set out in Morgan, supra. Defendant's proposed evidence to be elicited through cross-examination of Hope does not meet those requirements. Significantly, the conduct in question that defendant sought to elicit as probative of Hope's credibility is based on a statement by an unidentified witness, and as such, could not be admitted as probative of truthfulness or untruthfulness. Therefore, cross-examination of Hope regarding his alleged involvement in the Peele homicide would be inadmissible under Rule 608(b), and the trial court did not err in refusing to allow the cross-examination.
Defendant also asserts constitutional error under the North Carolina and United States Constitutions. "The Confrontation Clause [of the Sixth Amendment] guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." State v. McNeil, 350 N.C. 657,677, 518 S.E.2d 486, 498 (1999). "It does not follow . . . that the Confrontation Clause . . . prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." Id. at 677,518 S.E.2d at 499. The scope of cross-examination is subject to appropriate control by the court." State v. Hosey,318 N.C. 330, 334, 348 S.E.2d 805, 808 (1986).
The defendant was not denied a right to effective cross-examination. The trial court, in its discretion, solely prohibited cross-examination as to Hope's potential involvement in a separate homicide. In making its ruling, the trial court considered statements by defendant admitting that Hope had denied any involvement in the Peele homicide and that law enforcement had never developed Hope as a suspect. Therefore, admission of such evidence would have been more prejudicial than probative of any issue, including Hope's credibility. Further, the trial court did not prohibit cross-examination of Hope and challenges to Hope's credibility regarding other issues in defendant's case.
Therefore, we hold that cross-examination of Hope regarding the Peele homicide was not admissible under any of the asserted Rules of Evidence. The trial court did not err in granting the State's motion in limine, it did not abuse its discretion in refusing to allow this evidence, and defendant's constitutional rights were not violated.
No error.
Judges CALABRIA and ELMORE concur.
Report per Rule 30 (e).